Mehsati **HERAWI**, Plaintiff,

v.

**STATE OF ALABAMA DEPT. OF FORENSIC SCIENCES,**
Defendant.

**Civil Action No. 2:02cv1360–T.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 12, 2004.

Eileen Lucille Harris, Jay Brady Lewis, The Law Office of Jay Lewis, Montgomery, AL, Maury Steven Weiner, Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Plaintiff.

John J. Park, Jr., Office of the Attorney General, Montgomery, AL, for Defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Mehsati Herawi brought this action against her former employer de-

fendant State of Alabama Department of Forensic Sciences, claiming that the department fired her because of her Iranian origin and because of her complaints about discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17. A jury found in Herawi's favor and awarded her monetary damages, and Herawi and the department subsequently agreed to work out the issue of injunctive relief themselves.

The matter now before the court is the one remaining piece of injunctive relief about which Herawi and the department could not agree: the disposition of 12 documents contained in Herawi's personnel file at the Forensic Sciences Department. The court will order that the documents be removed from Herawi's personnel file but will allow them to be kept separately under seal to be unsealed only by court order.

## I. BACKGROUND

Herawi was born in Iran, earned her medical degree in Germany, and came to this country in 1993 to train as a forensic pathologist. In October 2001, she went to work for the Department of Forensic Sciences in Montgomery, Alabama. Her immediate supervisor was Dr. Emily Ward, and the director of the department was Dr. J.C. Upshaw Downs. Herawi was terminated by the department in March 2002.

Herawi subsequently brought suit against the department under Title VII. She claimed that the department fired her because of her national origin and because she had complained about her discriminatory treatment. *See Herawi v. State of Alabama Dep't of Forensic Sciences,* 311 F.Supp.2d 1335 (M.D.Ala.2004) (denying summary judgment in favor of the Department of Forensic Sciences on Herawi's discrimination and retaliation claims). The crux of Herawi's complaint was that Ward was biased against her because of her Iranian origin and that this bias infected Ward's assessments of Herawi's work and ultimately motivated the department to terminate her.

The department argued that its decision to terminate Herawi was based on her poor work performance and her inability to abide by the chain of command. The department cited two negative performance evaluations and a number of memoranda purporting to document Herawi's poor performance and disregard for office protocol. These documents, and six others related to Herawi's termination, are evidently still kept in a personnel file at the department.

After a two-day trial, the jury found in favor of Herawi. The jury found that her national origin and her complaints about her treatment based on her national origin were both motivating factors for the decision by the department to terminate her. While the jury was not asked to make a finding whether other factors also motivated the department, the jury did find that the department would not have terminated Herawi in the absence of the two prohibited factors. The jury awarded Herawi substantial money damages.

The court gave Herawi 14 days to file any motion for front pay, injunctive relief, attorneys' fees, or costs with the understanding that the parties would attempt to resolve these issues themselves. The parties were largely able to do so, and, on July 20, 2004, the court entered an order reflecting the parties agreement with respect to damages, attorneys' fees, costs, and front pay.[1] The court's July 20 order

---

1. Order, filed July 20, 2004 (doc. no. 79), ¶¶ a–c.

also reflects the parties' agreement that the department's records will henceforth show that Herawi resigned; that the department will give a "neutral" reference if asked about Herawi's employment; and that the Alabama Personnel Department, although not a party, will place under seal four documents related to Herawi's employment.[2]

One point of disagreement remains between the parties: the fate of the 12 documents in Herawi's personnel file at the Department of Forensic Sciences. Among the 12 documents that Herawi objects to being kept by the Department of Forensic Sciences are the four documents that she has agreed that the State Personnel Department will maintain under seal in its files.

## II. DISCUSSION

As stated, there are 12 documents in Herawi's personnel file at the Department of Forensic Sciences. The department has offered to put the documents under seal and to condition any future disclosure of the documents on receipt of a court order directing such disclosure. Herawi raises two objections to the department's proposal. First, she argues that various provisions of Alabama law require the department to remove the documents from her file. Second, she argues that she is entitled, under Title VII, to have the documents removed because the statements contained therein were motivated by discriminatory animus.

### A. State Law

■ Herawi's first argument appears to be that the department is violating Alabama law by maintaining a personnel file on her in the first place and that, therefore, the court should order the department to remove the documents from the file. The court need not resolve the sub-

stance of this argument because, under the Eleventh Amendment to the United States Constitution, it does not have the authority to order a state official to comply with state law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *Alexander v. Chattahoochee Valley Cmty. Coll.*, 325 F.Supp.2d 1274, 1294 (M.D.Ala. 2004) (Thompson, J.). Thus, whether or not the department or department officials are violating Alabama law with respect to the maintenance of personnel files, this court is without power to act.

### B. Title VII

■ Herawi's second argument is that the court should order the documents removed as relief due to her under Title VII because the documents reflect the discrimination found by the jury. "If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate ... or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e–5(g)(1). In other words, "[t]he district court has broad, equitable discretion to grant any equitable relief it deems appropriate to make persons whole for injuries suffered on account of unlawful employment discrimination." *Rivers v. Washington County Bd. of Educ.*, 770 F.2d 1010, 1012 (11th Cir.1985).

When an employee has been discriminated against and when the employee's personnel file contains documents that reflect that discrimination, courts have or-

---

2. *Id.* at ¶¶ d, f, & g.

dered that such documents be removed from the employee's file. *See, e.g. Bruso v. United Airlines, Inc.,* 239 F.3d 848, 863–64 (7th Cir.2001); *EEOC v. HBE Corp.,* 135 F.3d 543, 557–58 (8th Cir.1998). Indeed, it may be that, in such a case, 'expungement' is required. "By refusing to expunge discriminatory or retaliatory discipline from a successful plaintiff's personnel file, a court may force the plaintiff to bear the brunt of h[er] employer's unlawful conduct for the rest of h[er] working career, which certainly contravenes the goal of making a plaintiff whole through equitable remedies." *Bruso,* 239 F.3d at 863–64.

■ The court's discretion to expunge the personnel file of a successful plaintiff is not limitless, however. First, the plaintiff must specify the documents to be expunged. *Jones v. Rivers,* 732 F.Supp. 176, 178 (D.D.C.1990). Second, and more crucially, in order to be subject to expungement, the documents or records must be related to the illegal discrimination. *Sands v. Runyon,* 28 F.3d 1323, 1331 (2d Cir.1994).

The court agrees with Herawi that the documents in her department personnel file reflect either the illegal discrimination and retaliation found by the jury or the pretextual reasons offered by the department for its termination decision. It would be inconsistent with Title VII's remedial scheme to allow these documents to affect negatively Herawi's future employment prospects.

■ Herawi's file contains, for example, the negative "employee probationary performance appraisal" of Herawi conducted by Ward along with four memoranda written by Ward documenting incidents that Ward characterized as reflecting Herawi's poor performance and inability to work within the department's rules. The preponderance of the evidence at trial showed that Ward's assessment of Herawi was infected by her anti-Iranian prejudice. To leave these documents in Herawi's file, such that, in the future, a prospective employer could easily access them, would risk extending the impact of Ward's prejudice.

Herawi's file also contains a number of documents which explicitly state that Herawi's termination was for work-related reasons. Downs's letter to Herawi informing her of her termination, for example, states: "The reason for your [termination] ... is that you continue to require additional training in autopsy procedures and failure to properly use the chain of command." The jury explicitly found that Herawi's termination was motivated by illegal discrimination and that, but for that discrimination, she would not have been terminated. To allow these documents to remain readily available in Herawi's personnel file would perpetuate the falsehood that she was fired for a reason other than discrimination and saddle her with the professional stigma of having been terminated for cause.

Notwithstanding, the court does not agree with Herawi that the department's proposal with respect to the 12 documents, to the extent that the files will be removed from her personnel and retained separately under seal, is inadequate. Under the department's proposal, it seems unlikely that the documents will ever see the light of day at all, much less be used in a way that would perpetuate the illegal discrimination found in this case.

Moreover, the court cannot find in Herawi's briefs a consistent basis for her objection to the Forensic Sciences Department's proposal. If Herawi's concern is that placing the documents under seal is not sufficient protection, why did she not object to the State Personnel Department maintaining a copy of four of the 12 documents at issue in its file subject to release at the Personnel Department's director's

discretion? If anything, the Forensic Sciences Department's proposal offers more protection since a document's release is conditioned on a court order and not merely the discretion of the department's director.

Similarly, if Herawi objects on principle to the maintenance of these 12 personnel documents because they were influenced by discriminatory animus—an understandable objection—Why did she not object to the maintenance of four of the same documents in the Personnel Department's file?

Another possibility—one that might account for Herawi's concern with the Forensic Sciences Department's maintaining the documents but her apparent lack of concern about the Personnel Department's maintaining four of the same documents—is that Herawi simply does not trust the Forensic Sciences Department. Given her experience, this concern is understandable. However, the Forensic Sciences Department will not control the release of the documents; they will be under seal and can only be released by court order. Accordingly, the court is not persuaded that there is any reason that the department's proposal is inadequate as a remedy for the illegal discrimination in this case.

To be sure, the Forensic Sciences Department has not offered a compelling reason for not destroying the documents. It argues that to destroy the contents of Herawi's file would conflict with the "state practice" of not destroying public documents. While there may be a good reason for the State's general practice of maintaining documents, the department does not explain why the court should defer to such a practice in this case, where the jury's finding strongly suggests that the content of the memoranda and letters at issue was motivated by anti-Iranian bias.

Nevertheless, the court can imagine relevant, non-discriminatory uses for the documents. For example, the documents could be useful in resolving a future allegation of discrimination brought against the department or a future claim of discrimination brought by Herawi. While the court has substantial concerns that the subjective content of the evaluations, memoranda, and correspondence in Herawi's file is tainted by Ward's bias, those documents also describe events that undisputably happened. For these reasons, and absent a persuasive argument from Herawi as to why the documents should be destroyed, the Forensic Sciences Department's proposal (to the extent that it provides that the documents will be removed from Herawi's personal file and kept separately under seal subject to court order) offers the best compromise.

### III. CONCLUSION

For the above reasons, it is the ORDER, JUDGMENT and DECREE of the court that the defendant Alabama Department of Forensic Sciences shall remove from its personnel file of plaintiff Mehsati Herawi the following 12 documents and shall keep these documents separately under seal, conditioning any future disclosure of the sealed documents on receipt of a court order directing such disclosure:

1. Performance Appraisal, November 15, 2001;

2. Employee Probationary Performance Appraisal;

3. Memorandum from Ward, January 14, 2002;

4. Memorandum from Ward, January 30, 2002;

5. Memorandum from Ward, Feburary 5, 2002;

6. Memorandum from Ward, February 7, 2002;

7. Memorandum to file from Samuel L. Mitchell, March 26, 2002;

8. Letter from Downs to Herawi, April 18, 2002;

9. Personnel Department, Recommendation for Personnel Action, May 9, 2002;

10. Memorandum from Ward, undated;

11. Memorandum from Steve Christian, March 28, 2002; and,

12. Memorandum from A. Craig Bailey, September 17, 2002.